**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| MicroStrategy Services Corporation (dba Strategy), MicroStrategy Limited, and Strategy Inc (f/k/a MicroStrategy Incorporated),<br><br>          Plaintiffs,<br><br>    v.<br><br>ZS Associates, Inc.,<br><br>        Defendant. | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiffs MicroStrategy Services Corporation, MicroStrategy Limited, and Strategy Inc (f/k/a MicroStrategy Incorporated) (collectively, "Strategy") hereby file this Complaint against Defendant ZS Associates, Inc. ("Defendant" or "ZS"), and allege as follows:

**INTRODUCTION**

1.    Strategy is a leading provider of cloud-native, AI-powered worldwide enterprise analytics software, offered in both cloud-based and on premises platforms. Strategy's products serve millions of business users at thousands of companies around the world. Strategy's products are enterprise-grade and are priced commensurate with their quality and advanced features, ensuring that Strategy's customers receive unparalleled technology to drive their strategic decision-making processes and enhance operational efficiency.

2.    ZS entered into a business arrangement with Strategy to obtain access to Strategy's products at a price far below market price—by striking a deal whereby ZS would embed such products within ZS's own original equipment manufacturer ("OEM") software, and then

license that solution to ZS's third party end users.  Specifically, on December 31, 2009, Strategy and ZS entered into the "OEM Agreement," through which Strategy licensed its Products, as defined in the OEM Agreement, to ZS under limited, specific conditions and at a pricing tier that is a fraction of Strategy's standard list prices, and is unavailable on the open market.  Exhibit A at Section 1.1.  During the term of the OEM Agreement, ZS advertised to its customers that one of the benefits of using ZS's products is the ability to avoid paying "independent license fees" directly to Strategy:



(https://www.prnewswire.com/news-releases/zs-associates-releases-artis-business-intelligence-platform-for-life-sciences-industry-242205381.html).

3.      In the years since the OEM Agreement was signed, Strategy believed that ZS was complying with its obligations and Strategy has acted in good faith as a reliable and cooperative partner to Strategy.  Recently however, Strategy discovered—following a surprising admission

2

from a ZS employee and other conversations with ZS and ZS customers, after which Strategy exercised its audit rights—that ZS has been leveraging Strategy's proprietary, copyrighted technology outside the scope of the OEM Agreement. Rather than embedding Strategy Products in ZS OEM software and providing combined solutions to customers, ZS has instead simply provided Strategy Products to its customers in a stand-alone manner, in breach of the terms and conditions of the OEM Agreement. As such, ZS has been, in effect, reselling Strategy Products—after acquiring those products at a deeply reduced price available only where Strategy's Products are embedded in ZS's OEM Solution. ZS's stand-alone deployment of Strategy Products is a calculated, intentional effort to provide ZS's customers with access to Strategy Products, under the guise of incorporation into an OEM Solution, in order to take advantage of the OEM Agreement's substantially discounted pricing, to Strategy's detriment.

4.      ZS's breach of the OEM Agreement does not end there. During the audit, Strategy identified multiple other material breaches of the OEM Agreement. In addition to deploying Strategy's Products outside of the intended embedded application framework, ZS has further breached the OEM Agreement by using Strategy's Products in a single-tenant environment (contrary to the OEM Agreement's requirement for a multi-tenant environment), utilizing generic user accounts that undermine the OEM Agreement's per-individual licensing model, failing to accurately report royalties (to the extent the royalty model applies to such deployments), and adding unlicensed OEM Solutions that are not authorized by the OEM Agreement to ZS's stable of products. Moreover, ZS further breached the OEM Agreement by—in the course of the very audit uncovering ZS's breaches—interfering with Strategy's contractually-mandated audit rights.

5.      Strategy's discoveries have been confirmed by online postings by individuals identified as ZS employees.  For example, in a series of posts from September 2-4, 2025, on the professional online community Fishbowl (fishbowlapp.com), multiple "ZS Associates" confirmed that ZS has been "stealing [Strategy] licenses, underreporting usage, getting bulk deals on discount and selling at much higher premium to clients," "stealing stuff," and "lying to the clients."



Available at https://www.fishbowlapp.com/post/i-heard-that-microstrategy-has-filed-a-lawsuit-against-zs-does-anyone-has-more-info-about-it-im-up-for-some-tea (accessed Sept. 9, 2025); *see also* https://www.glassdoor.co.nz/Community/zs-associates-2/i-heard-that-microstrategy-has-filed-a-lawsuit-against-zs-does-anyone-has-more-info-about-it-im-up-for-some-tea-dx6p-5 (accessed Sept. 9, 2025).

6.      ZS has, until now, gotten away with unlawfully reselling Strategy Products at top dollar, after acquiring them for a fraction of their price—depriving Strategy of substantial sums that Strategy should have been paid for such use of its Products.  The law does not permit ZS to use Strategy's Products in this manner, and improperly reap for itself the benefits of Strategy's innovation and hard work.  Out of necessity, Strategy brings this suit to address the harm inflicted by ZS's unlicensed use of Strategy's proprietary, copyrighted products.

## PARTIES

7.      Plaintiffs MicroStrategy Services Corporation and Strategy Inc are incorporated in Delaware, with their office and principal place of business at 1850 Towers Crescent Plaza, Tysons Corner, Virginia 22182.

8.      Plaintiff MicroStrategy Limited is a company organized under the laws of the United Kingdom, having a registered office in London, United Kingdom.

9.      On information and belief, Defendant ZS is incorporated in Illinois, with its office and principal place of business at 1800 Sherman Ave, Suite 700, Evanston, IL 60201.

## JURISDICTION AND VENUE

10.      Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1332(a)(1), because the parties are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

5

11.     This Court has subject matter jurisdiction over the copyright cause of action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred in this District, specifically the operative contract between the parties was executed in this District, selects the governing law as the laws of the Commonwealth of Virginia, and Strategy licensed its software from its principal place of business in this District.

## FACTS

### Strategy's Products

13.     Strategy, founded in Northern Virginia in 1989, is one of Virginia's oldest technology companies.  It was founded by Michael Saylor and Sanju Bansal, two friends who met while students at MIT, and who set out to build tools and applications to help companies collect, organize, and visualize large amounts of business information—what is today called business intelligence ("BI").

14.     Over the past thirty-five years, Strategy has become a leading developer of enterprise analytics software.  During that time, Strategy has invested heavily in developing new product features, and has evolved from an early relational database reporting tool to a sophisticated platform.  Strategy's product journey has spanned the evolution from foundational database analytics and pioneering web-based BI, through enterprise-scale reporting, cloud and mobile breakthroughs, and most recently toward AI-driven, context-aware, and cloud-native intelligence—setting trends in analytics accessibility, flexibility, and automation.  Strategy's software offerings most recently include products like the Strategy One platform and Strategy Mosaic, which allow businesses to unify all data into a single trusted

6

platform, reducing redundant tools, cutting complexity, and lowering costs—powering analytics with clarity, consistency, and control, while boosting collaboration.

15.    As protection for the decades-long investment in its proprietary technology, Strategy copyrighted its Products, including its Server-Intelligence, Server-Analytics, Server-Transaction, Server-Distribution, Client-Mobile, Drivers-Big Data, Client-Application-API, Client-Web, Server-Collaboration, Server-Geospatial, Client-Hyper-Web, and Client-Hyper-Mobile software.

### The OEM Agreement

16.    Strategy and ZS entered the OEM Agreement effective December 31, 2009, and executed thirteen amendments to the OEM Agreement between 2011-2022. Exhibit A.

17.    In relevant part, the OEM Agreement grants ZS a set of limited licenses to use certain Strategy Products.

18.    With regard to any sublicensing, distribution, marketing, or demonstration of Strategy's Products, the OEM Agreement strictly limited use of the Products to instances in which a Product is embedded into ZS's OEM Software (as defined in the OEM Agreement) to create an "OEM Solution." Exhibit A at Section 1.1(a)(b)(d)(e). The definition of "OEM Solution" was originally limited to Javelin™. *See* Exhibit A (OEM Agreement) at Section 16.10, Exhibit 2. The parties later amended the OEM Agreement to add additional OEM Solution ARTiS™. Exhibit A, Amend. 2 at Paragraph 1. The parties later further amended the OEM Agreement to permit ZS to sell the ARTiS OEM Solution by other names. *See* Exhibit A, Amend. 8 at Paragraph 6 (adding ZS EDGE™); Exhibit A, Amend. 9 at Paragraph 6 (adding Revo™); Exhibit A, Amend. 13 at Paragraph 6 (adding ZAIDYN). The OEM

Agreement, as amended, limits the licensed OEM Solutions to those listed in this paragraph. Exhibit A, Amend. 13.

19.    The same restrictions apply to cloud-based use of the Strategy Products, as described in the ASP Addendum, which is Exhibit 7 to the OEM Agreement.  Exhibit A, Exhibit 7 at Section 1.8(c).  Per Schedule 1 to the ASP Addendum (as amended), such ASP Services are the same as their respective OEM Solutions, as described in Exhibit 2 of the OEM Agreement, provided that the ASP Services will be licensed to end user customers as part of a hosted application installed in a multi-tenant environment as part of a Software-as-a-Service or ASP offering, and installed on servers owned or controlled by OEM or OEM's third-party hosting services providers.  *See* Exhibit A, Amend. 13, at Section 3.

20.    The OEM Agreement, in Section 1.4, ***strictly prohibits*** copying, displaying, distributing, or using Strategy's Products other than as incorporated into OEM Software in an OEM Solution.  Exhibit A at Section 1.4(a) and (d).

21.    Pursuant to ASP Addendum (Exhibit 7 of the OEM Agreement), for any "unauthorized deployment" revealed during an audit of ZS by Strategy, ZS is required to pay Strategy the current Standard List Prices and technical support and maintenance for the period of the unauthorized deployment.  Exhibit A, Exhibit 7 at Section 2.4.

22.    The OEM Agreement contains a number of other restrictions on the use of Strategy's Products.  To start, OEM Solutions incorporating Strategy Products may only be sublicensed to specific, individual users, through what is referred to as "Named User Licenses."  Exhibit A, Exhibit 1.  A "Named User License" is a license to use a Product under which only one (1) identified individual using a single login ("Named User") may access the Product or reports or messages generated by the Product.  Exhibit A, Exhibit 8.

23.     As noted above, OEM Solutions provided via cloud access per the ASP Addendum must be provided in a multi-tenant environment.  The multi-tenant environment ensures that the OEM Solution is part of a Software-as-a-Service (SaaS) or ASP offering, and it must be installed on servers owned or controlled by ZS or its third-party hosting service providers.  *See* Exhibit A, Amend. 13 at Section 3.  The license does not permit the use of Strategy's Products in a single-tenant environment or for any purpose other than those explicitly stated in the OEM Agreement.  Exhibit A at Section 1.4(a).

24.     The OEM Agreement requires ZS to accurately report royalties for the use of the Products.  Exhibit A at 1.1, 3.1; *id.*, Exhibit 1; *id.* Exhibit 7 at Section 2.1, 2.3.

25.     The OEM Agreement affords Strategy the right to audit ZS's compliance with the terms of the OEM Agreement, and requires that ZS cooperate with such audits.  Specifically, the OEM Agreement grants Strategy the right to conduct audits of ZS's compliance with the OEM Agreement and requires ZS to reasonably cooperate with such audits.  Exhibit A, Exhibit 7 at Section 2.4(b); *see also* Exhibit A at Section 11.1 (requiring that ZS permit Strategy to examine corporate documents).

26.     The OEM Agreement states that Strategy's products are copyrighted.  *See, e.g.*, Exhibit A at Sections 1.8, 5.1(a); *id.*, Exhibit 7 at Section 1.7(b).

27.     The above-listed terms constitute material terms of the OEM Agreement, and failure to abide by any such material terms constitutes a default of the OEM Agreement and a breach of Strategy's proprietary rights.

**The 2025 Audit**

28.     On June 11, 2025, a ZS employee alerted Strategy to the fact that ZS was using Strategy Products without embedding them into ZS's OEM Software to create an OEM

Solution.  Specifically, in the course of communications between Strategy and ZS about customers' product use, a ZS employee disclosed that a particular customer that purportedly sublicensed the OEM Solution incorporating Strategy's Products was actually accessing Strategy Products outside of the OEM construct.

---

**From:** Laura Elisa Montealegre <laura.elisa.montealegre@zs.com>
**Date:** Wednesday, June 11, 2025 at 1:58 PM
**To:** Zeledon, Mel <melz@strategy.com>, Huang, James <jahuang@strategy.com>, Val Mushinskiy <val.mushinskiy@zs.com>
**Subject:** Re: End of Life, ███ and Enablement

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Mel,

Thank you for the intro, and looking forward to connecting later today.

For the OEM piece, this is something that needs to also be discussed with @Val Mushinskiy. I believe you are likely referring to ███ specifically, as it's the only client that falls under that OEM, yet is not in the OEM construct.

Best,
Laura

**Laura-Elisa Montealegre** (she / her) *why?*
Principal
M | +1 224 999 3118
www.zs.com

ZS  Impact where it matters

---

29.     In June 2025, Strategy representatives, in the course of providing additional information regarding Strategy's planned transition of its on-premises offering and end of support cycle for such products, also observed a reverse demonstration of the application supplied by ZS to one of its end user customers, which revealed that Strategy's products were being deployed by ZS on a stand-alone basis.

30.     In response, on July 8, 2025, Strategy exercised its contractual right under Section 11.1 of the OEM Agreement to begin the process of auditing ZS's compliance with the OEM Agreement by sending a written notice of audit.  The audit began on July 15, 2025, and continued through August 8 ("2025 Audit").

10

31.    During the 2025 Audit, ZS did not cooperate to provide full access to its systems and records for audit purposes.  For example, ZS withheld the list of OEM Solution-related SKUs that they offer to their customers; refused to provide most screenshots for the related mobile applications; did not permit Strategy to video-record demonstrations for such applications; withheld user guides, instruction manuals, training materials, and other documentation related to these solutions; and withheld royalty report spreadsheets.

32.    Despite ZS's noncompliance with the 2025 Audit, Strategy was able to ascertain that ZS has engaged in several activities that constitute defaults of material terms and conditions of the OEM Agreement.

### ZS Deploys Stand-Alone Strategy Products

33.    Consistent with ZS's admission via email on June 11, 2025, Strategy confirmed during the 2025 Audit that ZS has deployed stand-alone Strategy Products to their end user customers without integration into an OEM Solution, in direct violation of the OEM Agreement.

34.    During the 2025 Audit, Strategy identified multiple instances of ZS providing its customers direct access to Strategy Products via web-based self-service access.

35.    As depicted above, on information and belief, ZS deploys products with "Self-Service" environments, which generally refer to a web-based ad-hoc analysis, often taking place in Strategy Document or Strategy Dashboard editors.

36.    During the 2025 Audit, ZS admitted that over 1,000 users from just two customers have access to web-based self-service capabilities.

37.    The evidence collected in the 2025 Audit confirms that ZS is providing such customers with direct access to stand-alone Strategy Products—even going so far as to

prominently display the MicroStrategy "M" logo or the Strategy "S" logo in these deployments.



38.    For example, on August 7, 2025, during reverse demonstrations of one customer's applications provided by ZS, Strategy became aware that, upon authentication, users are taken directly to Strategy's interface and/or content.  Specifically, in these applications, users are taken directly to Strategy's dashboard landing page or Strategy's Library home page.

39.    On information and belief, ZS's stand-alone deployment of Strategy Products is a calculated and intentional effort to provide ZS's customers with access to stand-alone versions of Strategy Products, under the guise of incorporation into an OEM Solution, in order to take advantage of the OEM Agreement's lower bundled pricing, to Strategy's detriment.

**ZS Deploys Applications in a Single-Tenant Manner**

40.    During the 2025 Audit, Strategy discovered that ZS deploys Strategy Products in a single-tenant manner.

41.    As discovered during the 2025 Audit, ZS's applications, dashboards, and reports are client-specific, with each client having access to a customized application that is hosted on its own server.  Moreover, each client's customized application has a tailored application name, entry point, graphic design, look and feel, navigation, and content.

42.    On information and belief, each ZS application is independently developed and deployed, aligning to each customer's customization requests, which are addressed by client-specific development teams within ZS.

**ZS Deploys Unlicensed OEM Solutions**

43.    On information and belief, ZS is selling OEM Solutions identified by names other than those of the four licensed OEM solutions under the OEM Agreement.

44.    As an example, during the 2025 Audit, ZS provided reverse demonstrations of three unlicensed applications of one particular customer.  While ZS has represented that these applications are repackaged versions of the ARTiS OEM Solution, the OEM Agreement does not permit the renaming of an OEM Solution without an amendment to the OEM Agreement. Indeed, the course of dealing between the parties establishes that it was the parties' practice to execute such an amendment where identical OEMs were sold under a different name.  *See* Exhibit A, Amend. 8 at Paragraph 6; *see also id.*, Amend. 9 at Paragraph 6; *id.*, Amend. 13 at Paragraph 6.

45.    On information and belief, at least one of the unlicensed applications is built from the ground up on fresh metadata, which is not permitted under the OEM Agreement.  Further, all three unlicensed applications have different attributes from one another, indicating that they are not simply repackaged versions of the ARTiS OEM Solution.

**46.    ZS Deploys Generic User Accounts**

47.    During the 2025 Audit, Strategy conducted an analysis of License Manger reports from ZS.  The analysis revealed a significant number of generic user IDs within the system, which allows an unknown number of individuals to share a single license, undermining to OEM Agreement's per-user licensing framework.

48.    For example, one collection of end users includes generic user names totaling over 300 users, while another collection of end users includes generic user names totaling over 400 users.

49.     The use of generic accounts allows an unknown number of individuals to share a single license, undermining the per-user licensing framework in violation of the OEM Agreement.

**ZS Failed to Accurately Report Royalties**

50.     As addressed above, ZS has improperly sold stand-alone Strategy Products that were not licensed by the OEM Agreement, and accordingly were not entitled to the lower bundled pricing offered by the royalty terms of the OEM Agreement.  ZS's reporting of supposed OEM-embedded implementations of Strategy Products that were actually provided to customers as stand-alone Products constitutes a violation of the royalty reporting provisions of the OEM Agreement.

51.     To the extent such sales could be considered to be covered by the royalty provisions of the OEM Agreement, ZS has failed to accurately report licensing of Strategy Products.  ZS has admitted and acknowledged such failure, identifying a nine month period in 2024 where it recorded zero mobile licenses for one particular customer's projects, while in reality 1,243 mobile licenses were deployed.



52.     The 2025 Audit revealed discrepancies between the License Manager reports (Strategy's native reporting functionality included in the Strategy Products) and the royalty reports provided by ZS.  For example, the audit revealed the existence of applications which are not listed in the royalty reports, indicating unreported end users and unpaid deployment.

**Online Posts Confirm ZS's Misconduct**

53.     In addition to the evidence collected by Strategy during the 2025 Audit, online postings by individuals identified as ZS employees confirm that ZS is improperly using Strategy Products outside of the OEM Agreement.  For example, in a series of posts between September 2 to 4, 2025, multiple "ZS Associates" confirmed that ZS has been "stealing [Strategy] licenses, underreporting usage, getting bulk deals on discount and selling at much higher premium to clients," "stealing stuff," and "lying to the clients."



Available at https://www.fishbowlapp.com/post/i-heard-that-microstrategy-has-filed-a-lawsuit-against-zs-does-anyone-has-more-info-about-it-im-up-for-some-tea (accessed Sept. 9, 2025)



https://www.glassdoor.co.nz/Community/zs-associates-2/i-heard-that-microstrategy-has-filed-a-lawsuit-against-zs-does-anyone-has-more-info-about-it-im-up-for-some-tea-dx6p-5      (accessed

Sept. 9, 2025). These posts not only confirm that ZS is in breach of the OEM Agreement, but that such breach is willful and known throughout ZS.

### Strategy Has Given ZS Multiple Opportunities to Cure

54.     On August 14, 2025, Strategy sent ZS correspondence describing in detail the above-identified material breaches of the OEM Agreement and providing ZS an opportunity to cure. That letter gave ZS until August 23, 2025, to cure its breaches, consistent with the terms of the OEM Agreement.

55.     Thereafter, Strategy gave ZS numerous additional opportunities to resolve this matter, including by repeatedly extending the cure deadline and refraining from terminating the OEM Agreement for weeks after such termination was contractually allowed, to allow ZS time to further investigate and resolve this matter. Despite these efforts and concessions on Strategy's part, ZS has failed to meaningfully engage in any efforts to cure its misconduct.

56.     On September 11, 2025, Strategy sent ZS a termination letter, terminating the OEM Agreement.

### COUNT I
### BREACH OF CONTRACT

57.     Paragraphs 1-56 are incorporated fully as if restated herein.

58.     The OEM Agreement is a valid and enforceable agreement. *See* Exhibit A.

59.     ZS has materially breached its obligations under the OEM Agreement at least by deploying Strategy's Products outside of the intended OEM embedded application framework. Exhibit A at Section 1.1(a).

60.     ZS has materially breached its obligations under the OEM Agreement at least by using Strategy's Products in a single-tenant environment. Exhibit A, Amend. 13 at Section 3.

61.    ZS has materially breached its obligations under the OEM Agreement at least by utilizing generic user accounts.  Exhibit A, Exhibit 1.

62.    ZS has materially breached its obligations under the OEM Agreement at least by failing to accurately report royalties (to the extent the royalty model of the OEM Agreement applies to such deployments).  Exhibit A at Sections 1.1 and 3.1; *id.*, Exhibit 1.

63.    ZS has materially breached its obligations under the OEM Agreement at least by deploying unlicensed OEM Solutions.  Exhibit A at Section 1.1(a).

64.    ZS has materially breached its obligations under the OEM Agreement at least by failing to comply with its obligations pursuant to Strategy's audit rights.  Exhibit A at Section 11.1; *id.*, Exhibit 7 at Section 2.4(b).

65.    All of the above material breaches are defaults of material terms or conditions of the OEM Agreement.

66.    Strategy has performed all of its obligations owed to ZS pursuant to the terms of the OEM Agreement.

67.    As a direct and proximate cause of ZS's willful breach of the OEM Agreement, Strategy has been made to suffer damages in an amount to be determined at trial which, upon information and belief, exceeds $100,000,000 (before interest).

**COUNT II**
**UNJUST ENRICHMENT**

68.    Paragraphs 1-67 are incorporated fully as if restated herein.

69.    In the alternative to Count I, and to the extent (if any) that the OEM Agreement fails to account for the issues described above, Strategy pleads this equitable cause of action for recovering ZS's ill-gotten gains.

70.     Strategy provided ZS with access to and use of proprietary software products at a price far below market price, but only for use subject to certain limitations, as discussed above.

71.     Strategy reasonably expected ZS to utilize Strategy's Products in the manner agreed to by the parties, including deploying Strategy's Products only in the intended embedded application framework, using Strategy's Products in the required multi-tenant environment, using only Named User Accounts and not utilizing generic user accounts, accurately reporting royalties, deploying only licensed OEM Solutions, and complying and cooperating with Strategy's exercise of its audit rights.

72.     ZS is aware that Strategy conferred this favorable pricing benefit upon it in exchange for ZS using the Products as set forth in the OEM Agreement.

73.     ZS ignored the limitations set forth in the OEM Agreement and utilized Strategy's Products in unauthorized and unlicensed ways as described in paragraphs 1-67.

74.     It would be unjust for ZS to retain the benefit of the favorable pricing for Strategy's Products, including the profits ZS made deploying Strategy's Products in ways not authorized or licensed by the OEM Agreement.

75.     As a result of ZS's actions, Strategy has suffered direct damages in the form of lost profits and royalties in an amount, upon information and belief, over $100,000,000 (before interest).  ZS should not be permitted to keep those profits and is required to disgorge them and return them to Strategy.

## COUNT III
## DIRECT COPYRIGHT INFRINGEMENT

76.     Paragraphs 1-75 are incorporated fully as if restated herein.

77.     Strategy owns valid Copyrights for its Products.  The Copyrights were properly registered with the U.S. Copyright Office prior to instituting this action for copyright infringement.  Exhibit B.

78.     As set forth above, ZS lacks authorization, license, or permission from Strategy to copy, reproduce, prepare derivative works based on, and/or distribute to the public Strategy's Products except as expressly set forth in the OEM Agreement.

79.     As set forth above, ZS has violated Strategy's exclusive rights to copy, reproduce, prepare derivative works based on, and/or distribute to the public its Products.

80.     On information and belief, ZS was and remains aware that Strategy's Products, including Server-Intelligence, Server-Analytics, Server-Transaction, Client-Mobile, Drivers-Big Data, Client-Application-API, Client-Web, Server-Collaboration, Server-Geospatial, Client-Hyper-Web, and Client-Hyper-Mobile, are protected by copyright, and/or ZS has acted or is acting in reckless disregard of the possibility that it was infringing the Copyrights.

81.     ZS's copyright infringement has been and continues to be willful.

82.     ZS is directly liable for these acts of infringement in violation of 17 U.S.C. §§ 106 and 501.

83.     As a direct and proximate result of the copyright infringement, Strategy has suffered irreparable harm, for which it has no adequate remedy at law.

84.     Alternatively, due to the injury caused to Strategy by ZS's acts of direct copyright infringement, Strategy is entitled to statutory damages, actual damages, ZS's profits

attributable to its infringement, and other remedies provided by law, including but not limited to those under 17 U.S.C. §§ 504-505.

85.     Strategy is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for a judgment as against Defendant as follows:

a)  Judgment in favor of Strategy for all damages sustained as a result of ZS's breach of contract or by which ZS was unjustly enriched, in an amount to be proven at trial;

b)  Judgment of copyright infringement on all copyright counts and an order that Strategy is entitled to all actual damages it has suffered as well as all of ZS's profits attributable to the copyright infringement, or in the alternative, maximum statutory damages with respect to each of Strategy's copyrighted works, plus full costs and attorneys' fees as provided for by 17 U.S.C. § 505;

c)  Equitable relief enjoining ZS, its officers, agents, servants, employees, parent and subsidiary companies, assignees and successors in interest, and those persons and/or entities in concert or participation with ZS from: reproducing, preparing derivative works based upon, and publicly distributing Strategy's copyrighted software or derivative works and from further disclosing and/or distributing source material, and to deliver to the Court for destruction or other reasonable disposition all such materials and means for accomplishing the same in ZS's possession, custody, or control;

d)  Awarding Strategy damages in an amount to be determined at trial;

e)  Awarding Strategy attorneys' fees and costs incurred in prosecuting this action;

f)  Awarding pre-judgment and post-judgment interest, and any other interest or damages as required under the terms of the OEM Agreement; and

g)  Granting Strategy such other and further relief as this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for all issues so triable.

Dated:  September 11, 2025                     Respectfully submitted,

                                              By: /s/_____

> Charles B. Molster, III Va. Bar No. 23613
> Law Offices of Charles B. Molster, III PLLC
> 2141 Wisconsin Avenue, N.W., Suite M
> Washington, D.C. 20007
> (703) 346-1505 (cell)
> cmolster@molsterlaw.com
>
> Rachel R. Blitzer (*Pro Hac Vice* to be filed)
> rachel.blitzer@lw.com
> Cassandra M. Baloga (*Pro Hac Vice* to be filed)
> cassandra.baloga@lw.com
> LATHAM & WATKINS LLP
> 1271 Avenue of the Americas
> New York, NY 10022-4834
> Tel: (212) 906-1200
> Fax: (212) 751-4864
>
> Sarah Propst (*Pro Hac Vice* to be filed)
> sarah.propst@lw.com
> LATHAM & WATKINS LLP
> 555 Eleventh Street, N.W., Suite 1000
> Washington, DC 20004
> Telephone:  (202) 637-2200
> Facsimile:   (202) 637-2201
>
> *Counsel for MicroStrategy Services Corporation (dba Strategy), MicroStrategy Limited, and Strategy Inc (f/k/a MicroStrategy Incorporated)*